## City of Covington *v.* Covington & Cincinnati Bridge Co.

[Abstract Kentucky Law Reporter, Vol. 7—684.]

**Assessment of Bridge Company for Taxation.**

> The Covington and Cincinnati Bridge Co. is taxable by the city of Covington, and where for a given year the valuation is agreed to be $250,000 and the first half of the taxes is paid on that valuation, the council some time thereafter may not, while retaining such taxes, change the assessment to $400,000 and require the company to pay taxes on such valuation.

### APPEAL FROM KENTON CIRCUIT COURT.

March 4, 1886.

Opinion by Judge Pryor:

The principal and, so far as we can see from this record, the only question before us arises in regard to the taxation imposed upon the property assessed for the year 1881. Several objections have been urged as to the manner of assessment as well as to the sufficiency of the petition. The argument that the property had been regularly and lawfully assessed is but the opinion of the pleader; and the court passing on the case is not informed as to the steps taken by the council that made the assessment regular and lawful; nor do we understand what is meant by the word

"surplus" except by the admission in the pleading. The surplus is intended to include the realty of the appellee not included in or embraced by the realty already tested, and such an assessment can not be held valid, because neither in its legal nor its ordinary meaning is it held to embrace real estate.

No answer, however, was filed by the appellee, and the question arises as to the power of the city to tax the appellee on so much of its structure as lies between low-water mark and the top of the bank. We see no reason why taxation can not be imposed on this property for municipal purposes. In the case of *Louisville Bridge Co. v. Louisville,* 22 Ky. L. 703, 58 S. W. 598, it was in effect held by all the court that when benefits were derived from the city government such taxation could be imposed by the municipality; but in that case, because of the location of the bridge, connected with its use, and the legislative power under which the right to tax was claimed, it was held by a majority of the court, Judge Lewis dissenting, that taxation could not be imposed. But here the approach to the bridge over the very structure itself is not only within the municipal boundary, but is in the midst of or directly adjacent to the business part of the city, the police, however, extending over; but its proximity to the principal streets and the dwellings enable it to derive the benefits that naturally result from all improvements made by the city government, as much so as the property of the citizens located on adjacent streets. It is in fact a part of the city proper, and not only entitled to but derives protection from the city authorities.

Under such a state of facts the constitutional power to impose municipal burden can not well be doubted, nor is the argument that this property can not be severed for the purposes of taxation tenable. The court has already adjudged differently in the cases of *Ludlow v. Cincinnati Southern R. Co.,* 78 Ky. 357, 1 Ky. L. 105; *Lincoln County Court v. Louisville &c. R. Co.,* 3 Ky. L. 346. Nor can we well see how the payment of the taxes can be enforced upon a refusal to pay without the aid of the chancellor; and under the municipal legislation of the city and the legislation of the state that power is expressly conferred. The increase of the assessment from $250,000 to $400,000 seems to have been the subject of adjustment between the directors of the bridge company and the city authorities. Prior to the year 1881 the president of the bridge

company and the municipality had compromised the trouble of the assessment as to the value and fixed it at $250,000. This, however, applied only to that particular year and was not a fixed or permanent valuation; but it is evident that for the two years of '79 and '80 all the tax was paid that was claimed by the city, and that for the year 1881 another adjustment was made for that year on the basis of $250,000 and the taxes paid. A proposition was made by the president to pay taxes for that year on a value fixed at $250,000, and this proposition was submitted to the council and accepted.

The June half was then due, and the resolution adopted by the council was that this was to be paid within five days and that the penalty for non-payment was remitted. This resolution or report of the committee was adopted on the 16th of June, and it seems that on the 15th of June, the day before, the half was fully paid. It is now argued that as the one-half had been paid the day before by the bridge company, viz., on the 15th, that the council had the power to rescind the action made on the 16th, and did in fact on the 30th of June reconsider the adjustment and action of the council, concurring in the report of the committee on the 16th. Such an adjustment may be construed as made between two or more private persons. Negotiations were evidently pending between the city and the bridge company in regard to this taxation, the latter declining to pay on a valuation of $400,000; the proposition to pay on the $250,000 had been made by the company, and the latter no doubt had the assurance it would all prove satisfactory; and the day before the report of the committee was adopted, it handed over to the treasury the tax authorized by the compromise to be paid. The council must be presumed to have had knowledge of that fact, and the payment on the 15th under the approval made on the 16th must be held as binding on council. The city had the money of the bridge company in the vaults of its treasury, and knew through its officers what had been done; and to disregard such action some fifteen days after was a violation of the adjustment made. It was for this, doubtless, the chancellor dismissed the complaint, although as previously suggested the petition is defective. It is apparent that the tax on the property was paid at a valuation of $250,000, and that rescinding the resolution of June 30 is the only trouble now between the city and the bridge

company. A separation of the valuation of the lots from the structure under either compromise can not be maintained.

The judgment below is *affirmed*.

*Benton & Benton, for appellant.*

*Fisks, for appellee.*